# IN THE SUPREME COURT OF IOWA

No. 15–1766

Filed May 31, 2019

**JEFFREY ANDERSON,**

Appellant,

vs.

**ANDERSON TOOLING, INC., DEAN E. ANDERSON,**
and **CAROL A. ANDERSON,**

Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**ANDERSON TOOLING, INC.,**

Appellee,

vs.

**LORI J. ANDERSON** and **FABRICATION AND
CONSTRUCTION SERVICES, INC.,**

Appellants.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Jefferson County, Myron L. Gookin, Judge.

Appellants appeal from a judgment entered by the district court following a jury verdict. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**

Steven Gardner of Denefe, Gardner & Zingg, P.C., Ottumwa, for appellants.

Steven E. Ballard and Abigail L. Brown of Leff Law Firm, L.L.P., Iowa City, for appellees.

**CADY, Chief Justice.**

In this appeal, we primarily consider whether a judgment for civil conspiracy was properly modified by the district court following a jury trial. The court of appeals found the jury instruction pertaining to the conspiracy did not permit judgment to be modified. On our review, we affirm and adopt the opinion of the court of appeals except on the issue of the conspiracy. We affirm the judgment of the district court.

## I. Background Facts and Proceedings.

Spouses Dean and Carol Anderson own and operate Anderson Tooling, Inc. (ATI). The company offers many services, including rigging. Rigging is the movement of heavy machinery from one location to another. In 2005, Dean hired his brother, Jeffrey Anderson (Jeff), to work as the company's general manager and chief financial officer. He also hired Jeff's wife, Lori, as ATI's bookkeeper.

The couples met to discuss the terms of employment, but never completed a formal employment contract. Instead, Dean and Jeff made handwritten notes about the details discussed at the meeting. Generally, both sets of notes provided for Jeff's base salary at $52,000, with a percentage of "profit" of twenty percent up to $200,000 and thirty percent over $200,000. Neither set of notes defined the word "profit." Jeff claims his notes represent a valid employment contract because both brothers initialed the document. Dean denies having initialed it.

The lack of specificity in the agreement became the basis of a salary dispute between the brothers. In 2011, Jeff requested payments of his deferred compensation pursuant to the percentage split in the employment agreement. Dean and Carol denied the existence of a

written agreement and refused to pay Jeff. They also claimed their definition of profit did not align with Jeff's.[1]

While employed at ATI, Jeff formed an independent company named Fabrication & Construction Services Inc. (FabCon). FabCon's original purpose was to complete repair work on the building where ATI was located following flood damage. After this project, FabCon continued to operate and began providing rigging services, in competition with ATI. Upon learning of FabCon's rigging operations, Dean fired Jeff and Lori from ATI.

**A. Claims Filed.** Jeff asserts he was terminated due to his request for payment of the deferred compensation. He commenced an action against Dean, Carol, and ATI alleging a violation of the Iowa Wage Payment Collection Law (IWPCL), breach of contract, tortious discharge, and interference with contractual relationships.

Dean, Carol, and ATI filed a number of counterclaims. They filed a claim against Jeff for conversion, intentional interference with contracts, interference with a prospective business advantage, breach of fiduciary duty, and misappropriation of trade secrets. Dean and Carol claimed Jeff used ATI's customer list and rate information to FabCon's benefit. They also claimed Jeff was stealing and mismanaging ATI funds.

ATI sued Lori for breaching her fiduciary duty, claiming she diverted its funds to FabCon, Jeff, and herself. Additionally, ATI brought a claim against Lori and FabCon for conversion, intentional interference with contracts, interference with prospective business advantage, and conspiracy. These cases were consolidated for trial.

---

[1]Dean and Carol explained profit as whatever amount they were "able to take out of the company as profit."

**B. District Court Proceedings.** On May 13, 2015, these matters proceeded to a jury trial. After nearly two weeks of testimony, the jury was given two verdict forms with sixty-eight interrogatories and began deliberation. The first verdict form related to Jeff's claims against Dean, Carol, and ATI. The second verdict form related to the counterclaims against Jeff, Lori, and FabCon. On Jeff's claims, the jury concluded ATI did not violate the IWPCL and did not owe Jeff unpaid profit sharing or accrued vacation. The jury found no employment contract existed, thus ATI did not breach or intentionally interfere with Jeff's contract. It also concluded Dean and Carol did not act improperly as the company's directors.

The jury did find that Jeff was an ATI employee and wrongfully discharged for pursing unpaid wages. It awarded him $89,387.01 in lost wages, $5000 for emotional distress, and $52,000 in punitive damages.

On Dean and Carol's claims, the jury found Jeff breached his fiduciary duty and awarded them $436,255.18 in damages. Moreover, it concluded Jeff intentionally and improperly interfered with ATI's prospective business relationships, awarding $336,072.54 in damages. Damages against Jeff totaled $772,297.72. The district court entered judgments in these amounts.

The portion of the verdict form regarding the participation of Jeff, Lori, and FabCon in a conspiracy to harm ATI provided,

> Q. Did Jeffery Anderson commit any of the wrongs of conversion, interference with a prospective business advantage, breach of fiduciary duty, or misappropriation of trade secrets? . . . A. Yes. . . .
>
> Q. Did Lori Anderson and [FabCon] participate in a conspiracy with Jeffery Anderson to appropriate funds and projects belonging to [ATI]. . . . A. Yes. . . .
>
> Q. Was [ATI] damaged as a result of the conspiracy? . . . A. Yes. . . .

Q. State the amount of damages sustained by [ATI] as a result of the conspiracy. A. $0-duplication.

The jury also concluded Jeff, Lori, and FabCon did not convert ATI's property but found their conduct did constitute willful and wanton disregard for the opposing parties' rights. No damages were awarded on this finding. The jury concluded that while Lori and FabCon knew of ATI's prospective relationships, only FabCon intentionally and improperly interfered with those relationships, and that interference did not cause harm. Finally, it found Lori did not breach a fiduciary duty.

The parties agreed to a sealed verdict, allowing the jury to be discharged following the rendering of a verdict and without reporting its finding in court and in the presence of the litigants. *See* Iowa R. Civ. P. 1.931(3). When the jury finished its deliberations, the parties' attorneys were emailed the completed verdict form. They confirmed it did not contain irregularities and agreed the jury should be released.

Following trial, both sides filed posttrial motions. Jeff filed motions for new trial and judgment notwithstanding the verdict on the first verdict form. He claimed the jury's no-contract determination was contrary to the evidence because the parties disagreed on the terms of the contract, not its existence. Additionally, he argued the finding that Dean and Carol did not act improperly as corporate directors was contrary to the evidence. Jeff had previously moved for a directed verdict on both these issues at the close of evidence.

Jeff also moved for remittitur and alternatively moved for new trial on the second verdict form. He claimed the damages awarded against him were the result of improper influences and were not supported by the evidence. He asked the district court to remit the damages to $1.00

for each claim or alternatively grant a new trial. The court denied all of Jeff's posttrial motions.

ATI filed a motion under Iowa Rule of Civil Procedure 1.904(2) to enlarge, amend, or modify the judgment to make Lori and FabCon jointly and severally liable for the $772,297.72 judgment. Iowa R. Civ. P. 1.904(2). The district court granted the modification to extend liability for the judgment to Lori and FabCon.[2] It also granted ATI's motion for judgment notwithstanding the verdict to reduce Jeff's lost-earnings damages from $89,387.01 to $34,667.00, concluding Jeff mitigated the loss when he began working for another company at a higher salary following his termination from ATI.[3]

Jeff, Lori, and FabCon appealed the decision of the district court. It argued there was insufficient evidence to support the jury's damage determination, parts of the verdict were inconsistent, and the district court erred by granting ATI's modification motion. We transferred the case to the court of appeals.

**C. Court of Appeals Proceedings.** The court of appeals reasoned there was substantial evidence to support the jury's no-contract finding. The court found the fighting issue was not whether an employment contract was entered into but whether a contract involving the profit-sharing terms existed. It also concluded that appellants failed to preserve error on the damage determination and inconsistency issues.

---

[2]The court also modified the judgment to hold Lori and FabCon jointly and severally liable for one-half of court costs along with Jeff.

[3]The court rejected the portion of the motion claiming Jeff was not entitled to a tortious discharge award or punitive damages. It reasoned that an employer is not absolved from liability simply "because the employer ultimately succeeds in proving wages were not due" under an employment agreement.

The court of appeals affirmed the district court's ruling on all these issues.

However, the court of appeals reversed the district court's order imposing joint and several liability on Lori and FabCon. It reasoned Jeff's conduct did not form the basis of a conspiracy, given the verdict form and the jury instruction's limited the scope of conspiracy.[4] Thus, it determined a conspiracy did not exist for Lori and FabCon to join.

The appellees requested further review of the court of appeals' reversal of the conspiracy liability issue. The appellants filed a resistance to the further review application. However, they request that if further review is granted, this court review all issues raised in the original appeal. These issues include whether an employment contract existed, the jury's findings and verdict forms were consistent, and the record supported all the jury's determinations.

On review, we adopt the court of appeals opinion and disposition of all claims except the liability issue. On this issue, we find the district court did not abuse its discretion by granting the motion to amend.

## II. Standard of Review.

"[O]ur review of a court's ruling on a motion to amend the verdict should be for abuse of discretion." *Ostrem v. State Farm Mut. Auto. Ins.,* 666 N.W.2d 544, 547 (Iowa 2003). An abuse of discretion occurs when

---

[4]For example, in analyzing whether the appellants conspired to appropriate funds and projects belonging to ATI, the court of appeals explained,

> A conspiracy to appropriate funds and projects *belonging* to ATI necessarily falls outside the tort of interference with *prospective* business relationships. The jury was instructed " 'prospective business relationship' means a reasonable likely business relationship of financial benefit to ATI." "Likely" does not equate to funds and projects already owned or in the possession of ATI. Therefore Jeff's tortious interference conduct cannot be the basis of a conspiracy to appropriate funds and projects belonging to ATI.

the "decision is based on a ground or reason that is clearly untenable or when the court's discretion is exercised to a clearly unreasonable degree." *Pexa v. Auto Owners Ins.*, 686 N.W.2d 150, 160 (Iowa 2004).

### III. Civil Conspiracy Claims and Damages.

The narrow issue we face is whether the district court properly modified the judgment to extend liability to Lori and FabCon based on the jury's civil conspiracy findings. Generally, civil conspiracy requires an understanding between two or more parties to harm another; "[i]t involves some mutual mental action coupled with an intent to commit the act which results in injury." *Basic Chems., Inc. v. Benson*, 251 N.W.2d 220, 233 (Iowa 1977). A person becomes liable for the harm caused by another's tortious conduct when they commit, encourage, or assist such conduct. *See Ezzone v. Riccardi*, 525 N.W.2d 388, 398 (Iowa 1994); *see also* Restatement (Second) of Torts § 876, at 315 (1979).

Significantly, "[c]ivil conspiracy is not in itself actionable; rather it is the acts causing injury undertaken in furtherance of the conspiracy which give rise to the action." *Basic Chems., Inc.*, 251 N.W.2d at 233. Accordingly a claim of civil conspiracy is "essentially [a] method[] for imposing joint and several liability on all actors who committed a tortious act or any wrongful acts in furtherance thereof." *Salem Grain Co. v. Consol. Grain & Barge Co.*, 900 N.W.2d 909, 924 (Neb. 2017); *see also Reilly v. Anderson*, 727 N.W.2d 102, 109 (Iowa 2006) (holding Iowa's Comparative Fault Act does not extinguish joint and several liability for parties acting in concert).

Because civil conspiracy cannot support an independent cause of action, it cannot have its own measure of damages. Instead, damages are assessed based on the harm caused by the underlying tortious

activity.[5] *See Hoeffner v. Orrick, Herrington & Sutcliffe LLP*, 924 N.Y.S.2d 376, 377–78 (App. Div. 2011); 15A C.J.S. *Conspiracy* § 46, at 393–94 (2012). Thus, the joint and several liability shared by coconspirators is only for the damage caused by the underlying tort.

This backdrop illuminates the issue in the present case. The jury found Lori and FabCon participated in a civil conspiracy with Jeff to appropriate funds and projects belonging to ATI. In response to a request to determine the amount of damages sustained as a result of the conspiracy, the jury answered "0-duplication." Yet, this question does not follow the legal framework of civil conspiracy that bases damage amounts on the underlying tort. Because civil conspiracy is merely a means of distributing liability, the conspiracy claim would not result in an independent award of damages, absent some egregious aggravating factor not present in this case.[6]

Nevertheless, the jury award of zero dollars with the addition of "duplication" conforms to Instruction No. 51, stating, "A party cannot recover duplicate damages. Do not allow amounts awarded under one item of damage to be included in any amount awarded under another item of damage." *See 205 Corp. v. Brandow,* 517 N.W.2d 548, 551 (Iowa 1994) (remanding to district court to amend judgment in light of duplicative damages). In other words, any additional finding of damages

---

[5]Punitive damages may be available in particularly egregious cases of civil conspiracy like those involving fraud. *See All. Mortg. Co. v. Rothwell*, 900 P.2d 601, 610 (Cal. 1995) (en banc) ("Punitive damages are recoverable in those fraud actions involving intentional, but not negligent, misrepresentations."); *Lockwood Grader Corp. v. Bockhaus*, 270 P.2d 193, 199 (Colo. 1954) (en banc) (holding plaintiff was not entitled to exemplary damage when he was unable to prove actual damage).

[6]The jury did not award punitive damages despite finding Jeff, Lori, and FabCon's conduct constituted willful and wanton disregard for the right of the opposing party. This indicates the jury did not consider the facts of this case particularly egregious.

would be duplicative of the amounts already awarded for the underlying torts that are the basis of the conspiracy. The problem is the instructions and answers created confusion as to which torts were the basis of the conspiracy claim.

**IV. Judicial Changes to Flawed Jury Verdict.**

Generally, a court may only make nonsubstantive changes to a jury verdict. *See Clinton Physical Therapy Servs., P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 614 (Iowa 2006). If an error in a "verdict can be resolved based upon the instructions given to the jury and without violating the intent of the jury," then the change is nonsubstantive. *Sch. Dist. No. 12 v. Sec. Life of Denver Ins.*, 185 P.3d 781, 787 (Colo. 2008) (en banc). Courts have "the power to put a . . . defective verdict in such form as to make it conform to the intention of the jury, and carry its findings into effect, where the intention can be ascertained with certainty." 89 C.J.S. *Trial* § 1074, at 516; *accord Rutledge v. Johnson*, 282 N.W.2d 111, 114–15 (Iowa 1979). Examination of the record, including the verdict form and jury instructions, is one source the court may use to ascertain the jury's intent. *See Ostrem*, 666 N.W.2d at 547 (concluding the district court's denial of a motion to amend was not an abuse of discretion after examination of the verdict form and instructions to determine jury's intent).

In this case, the defects in the jury verdict are mirrored in the jury instruction and inform the disposition of this case. *See Poulsen v. Russell*, 300 N.W.2d 289, 294 (Iowa 1981) ("Unless objected to by a party, an instruction to the jury, right or wrong, is the law of the case."). Jury Instruction 46 explains that in order to recover on a conspiracy claim against Lori and FabCon, ATI must prove,

1. [Jeff] committed the wrongs of conversion, intentional interference with a prospective business advantage, breach of fiduciary duty, or misappropriation of trade secrets as defined [within these instructions].

2. Lori [and FabCon] participated in a conspiracy with [Jeff] to appropriate funds and projects belonging to ATI.

3. The nature and extent of damage.

Thus, the jury was aware that its findings regarding Jeff's tortious conduct were the first required element for a conspiracy verdict. It likely knew the damage determinations resulting from this conduct would also apply to the conspiracy portion of the verdict form. Accordingly, the jury understandably refused to award damages under the conspiracy section in order to avoid duplication. As the court of appeals held,

> The jury consistently found Jeff committed wrongdoing— interfering with ATI's prospective business relationships and breaching his fiduciary duties to ATI. The jury determined Lori and FabCon conspired with Jeff "to appropriate funds and projects belonging to [ATI]," and that ATI was damaged as a result of the conspiracy.

Due to the faulty structure of the verdict form, it initially appeared as if Jeff was the only person liable for the judgment. However, the jury determined that Lori and FabCon participated in a conspiracy with Jeff, and Jeff's conduct was the basis of the conspiracy. And, finally, the damages resulting from these actions were in the amount of $772,297.72.

Despite these flaws, we find the district court did not abuse its discretion in granting the amendment to extend liability to Lori and FabCon because the jury's intent is clear from examination of the record. We understand that it was possible that the conspiracy pertained to some but not all of the tortious conduct alleged and that a full award of damages would have been improper. Yet, the jury was instructed that it was not permitted to award duplicative damages. It also considered all

tort claims alleged and found Jeff breached his fiduciary duty and interfered with a prospective business advantage. It also determined the breach and interference caused damage. Thus, in considering the conspiracy claim, a logical deduction can be drawn that the jury found the two torts committed by Jeff to be the two torts that served as the basis for the conspiracy. It found Lori conspired with Jeff but followed the instructions and awarded no damages because they would have been duplicative of the damages awarded for Jeff's torts. Thus, the district court's ruling, in effect, honors the intention of the jury and correctly applies our rule of law, holding coconspirators jointly and severally liable for damages resulting from the conspiracy. Finally, the court's modification is a permissible nonsubstantive change because it is based on the instructions given to the jury and effectuates the jury's intent. *Sch. Dist. No. 12*, 185 P.3d at 787.

### V. Other Flaws in Verdict Form.

The appellants assert problems with the verdict forms in addition to the failure to require the jury to identify the specific torts involved in the conspiracy, including the manner in which the forms were organized and the assumption or suggestion that the torts by Jeff would be the basis for a conspiracy. Yet, these other issues have not been adequately preserved for our review. Appellants failed to object to the jury instructions and verdict form before closing arguments were made at trial, thereby waiving their right to appeal. *See, e.g.*, Iowa R. Civ. P. 1.924 (stating objections to jury instructions are waived if not made prior to closing arguments); *Olson v. Sumpter*, 728 N.W.2d 844, 850 (Iowa 2007) (finding district court erred in its grant of a new trial when appellee failed to object to jury instructions and verdict form before closing arguments).

Finally, we observe that the central issue in this appeal was not addressed and corrected at trial because counsel agreed to a sealed verdict and were not present when the verdict was returned to review it carefully before the court discharged the jury. We do not discourage the use of sealed verdicts, but caution that they may not always be suitable, especially in complex litigation of this nature. The defects in the verdict forms alleged on appeal could have been addressed at trial and may have been corrected so that an appeal would have been avoided. This observation is not a criticism but an endorsement of the importance of every stage of trial.

**VI. Conclusion.**

We find the district court did not abuse its discretion in granting the motion to amend the judgment. Accordingly, we affirm in part and vacate in part the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except McDonald, J., who takes no part.